## UNITED STATES v. INTERNATIONAL HARVESTER CO. et al.

(District Court, D. Minnesota, Third Division.)

No. 624.

**Monopolies ⬅️12(1)—Purpose of preventing undue restraint in trade stated.**

Purpose of preventing undue restraint in trade is to prevent unreasonably high prices to purchasers and users of articles traded in.

Stone, Circuit Judge, dissenting.

In Equity. Suit by the United States against the International Harvester Company, wherein a consent decree was rendered for the purpose of restoring and maintaining competitive condition in interstate commerce. On a supplemental petition of the government for a further decree requiring a division of the assets and business of the defendant company. Supplemental petition dismissed.

Abram F. Myers and James A. Fowler, Sp. Asst. Attys. Gen. (H. M. Daugherty, Atty. Gen., A. T. Seymour, Asst. Atty. Gen., Lafayette French, Jr., U. S. Atty., of St. Paul, Minn., and Guy D. Goff and W. F. Martin, Sp. Asst. Attys. Gen., on the supplemental petition), for the United States.

Cordenio A. Severance, of St. Paul, Minn., Richard V. Lindabury, of Newark, N. J., and William S. Elliott and Victor A. Remy, both of Chicago, Ill. (Arthur F. Mullen, of Omaha, Neb., on the brief), for defendants.

Before SANBORN, STONE, LEWIS, and KENYON, Circuit Judges.

SANBORN, Circuit Judge. This case was argued and submitted to the four Circuit Judges named above, but after an examination of the record Judge KENYON considered himself disqualified, and took no part in the conferences concerning or the decision of the issues the case presents.

In the year 1912 the United States brought this suit against the defendants under section 4 of the Anti-Trust Act (section 8823, Compiled Statutes), to enjoin them from the undue and unreasonable monopolization or restraint of interstate commerce in the United States in harvesting machines and other agricultural implements. The defendants answered the complaint, much evidence was introduced, a decree was rendered on August 15, 1914, an order modifying this decree was made on October 3, 1914, and on November 2, 1918, a consent decree was rendered for the purpose of restoring and maintaining competitive conditions in the United States in interstate commerce in harvesting machines and other agricultural implements, to the effect that (a) the International Harvester Company, its officers, directors, and agents, were prohibited after December 31, 1919, from having more than one representative in any city or town in the United States for the sale of their harvesting machines and other agricultural implements; (b) that it should sell at reasonable prices the harvesting machine lines and their appurtenances then made and sold by it under the trade-names "Osborne," "Milwaukee," and "Champion" to independent responsible manufacturers of agricultural implements in the United States; (c) that it should also offer and endeavor to sell at reasonable prices in connection with such harvester lines the "Champion" harvester plant and works at Springfield, Ohio, and the "Osborne" harvester No. 1 plant and works at Auburn, N. Y.; (d) that, in case any of the said three lines, plants, etc., should not be sold within one year after the close of the war, it should at the request of the United States be sold at auction; and (e) that, in the event that such competitive conditions should not have been restored at the expiration of two years from the entry of the decree, or by November 2, 1920, the United States should have the right to such further relief here as should be necessary to restore said competitive conditions and to bring about a situation in harmony with law.

The International Harvester Company complied with the requirements of clauses (a), (b), (c), and (d) of the decree, and claimed to have complied with the requirements of clause (e); but on July 17, 1923, the United States filed in this court its supplemental petition, not on the ground that the International Harvester Company had failed or refused to comply with any of the specific requirements of clauses (a), (b), (c), and (d) of the consent decree, but on the ground that it was nevertheless unduly and unlawfully monopolizing and restraining interstate commerce in harvesting machinery and its appurtenances, and it prayed for a further decree "that the business and assets of the defendant, the International Harvester Company, be separated and divided among at least three separate, distinct, and independent corporations," and for other relief of a kindred nature. The International Harvester Company by its answer denied that it was, or had been since the decree of November 2, 1918, unreasonably monopolizing or restraining interstate commerce in the harvesting or other machinery it was manufacturing and selling, and alleged that such commerce was and long had been free and unrestrained, that the competition in it was keen and free, and that the prices of its products to consumers were low. Upon the issues thus presented many volumes of evidence have been introduced, learned and instructive arguments have been heard, elaborate briefs have been submitted, and all these have received the consideration of the court. The questions for decision, however, are questions of fact; no good purpose would be served by reciting the evidence which has convinced us, and it is impracticable to do so within the reasonable limits of an opinion. We content ourselves with a statement of our conclusions.

The evidence in this case has convinced, not only that it fails to prove by a fair, or, any, preponderance thereof that the International Harvester Company, since the sale of the "Osborne," "Milwaukee," and "Champion" lines and their appurtenances, has been or is unduly or unreasonably monopolizing or restraining interstate commerce in harvesting machines or their appurtenances in the United States; but in our opinion it conclusively proves that it has not done and is not doing so, that competition in the manufacture and sale of harvesting machines and their appurtenances in interstate commerce in the United States has been and is free and untrammeled, that the percentage of all such machines that were made and sold by the International Harvester Company has decreased from about 85 per cent. in 1902, to about 64 per cent. at the time of the decree of No-

vember 2, 1918, and ever since that powerful and successful independent competitors of the Harvester Company contest the field with it, and that in their presence it cannot and does not control or dictate the prices of the harvesting machines and their appurtenances which it and its competitors make and sell, that the prices of its machines and appurtenances to the dealers, and to the farmers who use them, in proportion to their costs, have decreased and are low. The purpose of preventing undue restraint of trade is to prevent unreasonably high prices to the purchasers and users of the articles traded in. The evidence in this case satisfies us that these objects have been successfully attained under the decree of November 2, 1918, the defendant's compliance with its requirements, and their conduct of their interstate commerce in harvesting machines and their appurtenances since the rendition of that decree.

The supplemental petition of the United States, filed in this case on July 17, 1923, therefore must be and it is hereby dismissed.

STONE, Circuit Judge (dissenting). 1. The decree in this case provided (a) that defendant, International Harvester Company, was an unlawful combination; (b) that it should be dissolved "into such number of parts of separate and distinct ownership as may be necessary to *restore* competitive conditions and bring about a *new* situation in harmony with law"; (c) that the defendants be given an opportunity to present a plan "for such separation and division"; (d) that if defendants did not present such plan, the court would entertain an application for a receiver; (e) that jurisdiction was retained "to make such additional decrees as may be deemed necessary to secure the *final winding up* and *dissolution* of the combination and monopoly complained of." That decree was made final by dismissal of defendants' appeal therefrom to the Supreme Court and by express statement in the consent decree or order entered November 2, 1918.

2. An agreed plan "for carrying into effect the order contained in said decree that the combination and monopoly therein adjudged to be dissolved" was set forth and approved in the decree or order of November 2, 1918.

That plan provided (a) that the Osborne, Milwaukee and Champion lines of harvesting machines (then being made and sold by defendant, International Harvester Company), as well as the plants where such lines had formerly been made, should, within a stated time, each be sold to separate responsible manufacturers of agricultural machinery which were free from control of defendants; (b) that unless competitive conditions were restored in harvesting machinery within a stated time, the plaintiff might apply for such further relief as necessary to such restoration; (c) jurisdiction was retained "to carry into effect the provisions of the decrees herein entered."

3. The test period for the above plan having expired, the plaintiff presents its application and case for further relief and asks dissolution of defendants' business and assets into three separately owned companies or groups, one of which shall include the Deering lines, one the McCormick lines and one the material companies.

Defendants present no counterplan but stand upon their contention that the plan now in operation has proven such a dissolution of the business as to restore competitive conditions.

4. I think the evidence upon the application shows that the plan has entirely failed to restore genuine competitive conditions. True competition does not exist where one of the "competitors" so entirely dominates the particular industry or trade that it can and does dictate the "competitive" prices. Competition which depends upon the sufferance of one of the competitors is a complete sham. This evidence convinces me that the International has such advantages in resources, organization, selling mediums, production costs, ownership and manufacture of raw material (steel) and in volume and spread of business as to be able completely to dominate this business. Also, that it does so control, and dominate by regulating prices. The International fixes prices for its own harvesting machinery and the other manufacturers prudently govern their prices thereby.

5. I think the court should consider means to restore real competitive conditions, either by carrying out some division of assets and property in accordance with the decree or by orders which will prevent the harmful exercise, by defendants, of the existing power to control this vital industry.